IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CONESTOGA TITLE** | : | CIVIL ACTION |
| **INSURANCE COMPANY** | : | |
| | : | |
| v. | : | |
| | : | |
| **ABM TITLE SERVICES, INC.** | : | |
| | : | |
| v. | : | |
| | : | |
| **ALAN MEROVITCH AND JAY YACKOW** | : | No.  10-CV-3017 |

CONESTOGA TITLE INSURANCE COMPANY'S
<u>REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

JOHN A. WAIT, ESQUIRE
Fox Rothschild  LLP
100 Park Avenue @ East 40th Street
15th Floor
New York, NY 10017
(212) 878-7900

-and-

Edward J. Hayes, Esquire
Admitted *Pro Hac Vice*
2000 Market Street, 20th Floor
   Philadelphia, PA 19103-3222
(215) 299-2092

Attorneys for Plaintiff, Conestoga
Title Insurance Company

Dated:  December 9, 2011

-i-

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. TO THE EXTENT THIS COURT ADOPTS PENNSYLVANIA LAW IN DECIDING THIS CASE, THERE IS AMPLE PENNSYLVANIA AUTHORITY TO SUPPORT THE CLAIMS MADE BY CONESTOGA IN THIS CASE. .................... 1

III. THE STATUTE OF LIMITATIONS DOES NOT BAR CONESTOGA'S CLAIM. ................................................................................................................... 4

IV. CONESTOGA IS NOT BRINGING THIS ACTION AS A SUBROGEE AND THEREFORE, IT IS NOT SUBJECT TO ANY DEFENSES WHICH MIGHT HAVE BEEN AVAILABLE AGAINST ER HOLDINGS. ............................................... 7

V. CONESTOGA HAS ESTABLISHED ITS RIGHT TO RELIEF. .................................... 7

VI. CONCLUSION ...................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adriatic Ship Supply v. M/V Shaula,*
   632 F.Supp. 1573 (E.D.Pa. 1986) ................................................................................. 3

*Agency Rent a Car v. Grant Rent a Car,*
   98 F.3d 25 (2nd Cir. 1996) ............................................................................................ 2

*American Legion v. Southwest Title,*
   253 La. 608, 218 So.2d 612 (1969) .............................................................................. 6

*Atcovitz v. Gulph Mills Tennis Club,*
   571 Pa. 580, 812 A.2d 1218 (2002) .............................................................................. 2

*B&M Linen Corp. v. Kannegiesser,*
   679 F.Supp.2d 474 (S.D.N.Y. 2010) ............................................................................ 3

*Birth Center v. St. Paul Companies,*
   567 Pa. 386, 787 A.2d 376 (2001) ................................................................................ 2

*Bronen v. New York Abstract Company,*
   19 A.D.2d 821, 243 N.Y.S.2d 664 (1963) ................................................................... 6

*Chatham Communications, Inc. v. General Press Corp.,*
   344 A.2d 837 (Pa. 1975) ............................................................................................... 3

*City of Reading v. Feltman,*
   562 A.2d 926 (Pa. Cmwlth.1989) ................................................................................. 3

*Continental Casualty v. Stonghold Insurance,*
   77 F.3d 16 (2nd Cir. 1996) .............................................................................................. 5

*Corace v. Balint,*
   210 A.2d 882 (Pa. 1965) ............................................................................................... 3

*Edinberg Volunteer Fire v. Danko Emergency,*
   55 A.D.3d 1108, 867 N.Y.S.2d 547 (2008) ................................................................. 3

*Elliott v. Chicago Title Insurance Company,*
   123 Ill.App.3d 226, 462 N.E.2d 640 (1984) ................................................................ 5

*Hooper Associates v. AGS Computers,*
   74 N.Y.2d 487, 548 N.E.2d 903 (C.A.N.Y. 1989) ...................................................... 3

*Invensys v. American Manufacturing,*
  2005 WL 600297 (E.D.Pa. 2005) ................................................................... 5

*Mack Trucking v. Bendix-Westinghouse,*
  372 F.2d 18 (3rd Cir. 1967) ........................................................................... 5

*McClure v. Deerland Corporation,*
  401 Pa.Super. 226, 585 A.2d 19 (1991) ......................................................... 4

*Meadows v. Planet Aid,*
  676 F.Supp.2d 83 (E.D.N.Y. 2009) ................................................................ 2

*Morgan Stanley v. JP Morgan Chase,*
  645 F.Supp.2d 248 (S.D.N.Y. 2009) ............................................................... 2

*Paper Mill Supply v. Container Corporation,*
  301 Pa. 62, 151 A. 588 (1930) ....................................................................... 2

*People v. Chicago Title,*
  37 Ill.App.3d 950, 346 N.E.2d 168 (1976) .................................................... 6

*Ruthrauff, Inc. v. Ravin, Inc.,*
  2006 Pa.Super. 352, 914 A.2d 880 (2006) .................................................... 2

*Shamnoski v. PG Energy,*
  579 Pa. 652, 858 A.2d 589 (2004) ................................................................ 2

*Snyder v. Snyder,*
  620 A.2d 1133 (Pa. 1993) .............................................................................. 3

*Stanford v. Kuwait Airways Corp.,*
  89 F.3d 117 (2nd Cir. 1996) ........................................................................... 2

*Universal Computer Systems, Inc. v. Medical Services Ass'n,*
  474 F.Supp. 472 (1979) ................................................................................. 3

Plaintiff, Conestoga Title Insurance Company ("Conestoga"), by its attorneys, John A. Wait and Edward J. Hayes, Esquires, hereby submits this Reply Brief in further support of its motion for summary judgment against Defendant, ABM Title Services, Inc. ("ABM").

## I.   INTRODUCTION

The response filed by ABM does not address the real issue in this case, i.e., whether ABM acted reasonably in allowing the two loan transactions to close when it was fully aware that there were serious questions about the authority of Riccardo Tedesco ("Riccardo") to bind 122 W.P.R. Corp. ("W.P.R."), the borrower.  Instead, ABM argues (1) that Conestoga has not cited any Pennsylvania law to support its claims, (2) that Conestoga's claims are somehow barred by the statute of limitations, (3) that Conestoga is bound by the alleged actions of ER Holdings in the underlying transactions despite the fact that it is acting in its individual capacity and not as subrogee of ER Holdings, and (4) that ABM's lack of due diligence is somehow excused by the fact that Conestoga did not specifically address the corporate authority issue in its underwriting memoranda.  None of these arguments defeat the right of Conestoga to summary judgment in this matter and each will be addressed separately below.

## II.   TO THE EXTENT THIS COURT ADOPTS PENNSYLVANIA LAW IN DECIDING THIS CASE, THERE IS AMPLE PENNSYLVANIA AUTHORITY TO SUPPORT THE CLAIMS MADE BY CONESTOGA IN THIS CASE.

In its first defense, ABM contends that Conestoga did not cite any Pennsylvania law in its Brief.  To the extent this Court decides that the matter is governed by Pennsylvania law, it is clear that the law of Pennsylvania is no different than the law of New York previously cited in Conestoga's Brief.

As to the breach of contract claim, Pennsylvania law provides that a party must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by

the contract and (3) resultant damages." ***Ruthrauff, Inc. v. Ravin, Inc., 2006 Pa.Super. 352, 914 A.2d 880, 888 (2006).*** This is no different than the law of New York cited in Conestoga's initial Brief. ***See, Agency Rent a Car v. Grant Rent a Car, 98 F.3d 25, 31 (2nd Cir. 1996). Meadows v. Planet Aid, 676 F.Supp.2d 83, 95 (E.D.N.Y. 2009).*** "The purpose of damages in contract actions is to return the parties to the position they would have been in but for the breach." ***Birth Center v. St. Paul Companies, 567 Pa. 386, 400, 787 A.2d 376, 385 (2001).*** Only by requiring ABM to pay Conestoga the amount paid to ER Holdings and all attorney's fees incurred by Conestoga in the prosecution of this action can Conestoga be put in the position it would have been but for ABM's breach.

As to the claim that ABM acted negligently, Pennsylvania law "requires allegations that establish the breach of a legally recognized duty or obligation that is causally connected to damages suffered by the complainant." ***Shamnoski v. PG Energy, 579 Pa. 652, 674, 858 A.2d 589, 602 (2004).*** "The elements necessary to plead an action in negligence are: (1) the existence of a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant." ***Atcovitz v. Gulph Mills Tennis Club, 571 Pa. 580, 586, 812 A.2d 1218, 1222 (2002).*** This authority is no different than the New York law cited in Conestoga's initial Brief. ***See, Morgan Stanley v. JP Morgan Chase, 645 F.Supp.2d 248, 255 (S.D.N.Y. 2009). Stanford v. Kuwait Airways Corp., 89 F.3d 117, 123 (2nd Cir. 1996).***

As to the duty of ABM to adequately investigate the authority of Tedesco before closing the loan transactions, Pennsylvania law provides that a person dealing with an agent has the duty to "trace his authority to its source to ascertain whether he possessed such power." ***Paper Mill***

*Supply v. Container Corporation, 301 Pa. 62, 151 A. 588, 590 (1930).* Pennsylvania law in this regard is no different than applicable New York Law. *See, Edinberg Volunteer Fire v. Danko Emergency, 55 A.D.3d 1108, 1110-1111, 867 N.Y.S.2d 547, 550 (2008).* "A third person dealing with an agent has a duty to use reasonable care to ascertain his authority, especially when dealing with the agent for the first time." *Universal Computer Systems, Inc. v. Medical Services Ass'n, 474 F.Supp. 472, 477 (1979).* As this Court is aware, ABM had no prior dealings with Riccardo or W.P.R. In this case, ABM simply relied on documents executed by Tedesco to support his contention that he was authorized to bind W.P.R. This flies in the face of ABM's obligations under Pennsylvania law, just the same as it did under New York law. "The law is clear that an alleged agent's extra-judicial statements cannot establish the fact of agency." *Adriatic Ship Supply v. M/V Shaula, 632 F.Supp. 1573, 1575 (E.D.Pa. 1986).* The Court in *Adriatic* went on to state that a party who "accepted without further inquiry the bare statements of the ---[alleged agents] to the effect that they represented the [principal], acted at its own peril." *Id. at 1576.* Under the facts of this case, ABM acted at its own peril to Conestoga's detriment.

As to Conestoga's claim for attorney's fees, Pennsylvania follows the "American Rule," which provides that "in the absence of statute or contract, each party pays its own counsel fees." *City of Reading v. Feltman, 562 A.2d 926, 930 (Pa. Cmwlth.1989). See also, Chatham Communications, Inc. v. General Press Corp., 344 A.2d 837, 842 (Pa. 1975); Snyder v. Snyder, 620 A.2d 1133 (Pa. 1993); Corace v. Balint, 210 A.2d 882 (Pa. 1965).* This precedent is the same as controlling New York law. *Hooper Associates v. AGS Computers, 74 N.Y.2d 487, 491, 548 N.E.2d 903 (C.A.N.Y. 1989); B&M Linen Corp. v. Kannegiesser, 679 F.Supp.2d 474, 485 (S.D.N.Y. 2010).* In this case, since there is an agreement of the parties to pay legal fees under the Agency Agreement, such fees are recoverable under Pennsylvania law.

Pennsylvania law requires the same proof as New York law to support Conestoga's claims. Based on the arguments made in Conestoga's Brief in support of its motion for summary judgment, it can be seen that Conestoga has established all of the necessary elements for the relief requested regardless of whether New York or Pennsylvania law is applied.

### III. THE STATUTE OF LIMITATIONS DOES NOT BAR CONESTOGA'S CLAIM.

ABM attempts to avoid liability in this matter by contending that Conestoga did not file this case in a timely matter. A review of the facts and the applicable law shows that there is no legal support for ABM's position.

Conestoga seeks to enforce its contractual right to indemnification as set forth in the Agency Agreement with ABM. Paragraph 5 of the agreement provides as follows:

> Agent agrees to be solely liable and indemnify Conestoga for all attorney's fees, court costs, expenses and loss or aggregate of losses resulting from shortages in its escrow accounts, fraud, negligence or misconduct of its agents, its officers, or employees in the issuance of title insurance.

*Agency Agreement ¶ 5.* Under this language, ABM is obligated to indemnify Conestoga for its losses in this case. Although the underlying transactions at which ABM acted improperly occurred in February and March of 2006, the cause of action for indemnification did not accrue at that time. Instead, the cause of action accrued at the time Conestoga made payment to ER Holdings in February of 2010. It was at that time that Conestoga first had the right to seek indemnification from ABM under the Agency Agreement.

"It is clear that before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. Any action for indemnification before such payment…is premature." *McClure v. Deerland Corporation, 401 Pa.Super. 226, 585 A.2d 19, 23 (1991),* citing *F.J. Schindler Equipment Company v. Raymond Company, 264 Pa.Super. 530, 532, 418 A.2d 533,*

534 (1980). The law in New York is no different. ***See, Continental Casualty v. Stonghold Insurance, 77 F.3d 16, 19 (2nd Cir. 1996).***

> The concept of 'the arising of a cause of action' is used frequently to systematize and facilitate the application of statutes of limitations. Usually, the problem is to determine when the statute begins to run. In this context, the familiar rule is that the statute begins to run when the cause of action arises, as determined by the occurrence of the final significant event necessary to make the claim suable. [Citations omitted]. With reference to claims for indemnification for loss, this means that the cause arises when the plaintiff sustains the loss for which he can claim indemnification.

***Mack Trucking v. Bendix-Westinghouse, 372 F.2d 18, 20 (3rd Cir. 1967).*** In this case, Conestoga sustained its loss when it paid monies to ER Holdings as required under the title insurance policies after the mortgages were declared void. The fact that Conestoga may have incurred attorney's fees prior to that date does not start the running of the statute. ***Invensys v. American Manufacturing, 2005 WL 600297 (E.D.Pa. 2005).*** The cause of action for indemnification against ABM began to accrue on February 22, 2010. As a result, the case was filed within the appropriate statute of limitations, which under Pennsylvania law is four years from the date of accrual for a breach of contract and two years for negligence. Conestoga met both.

In analyzing ABM's statute of limitations argument, it is important to understand the rights of Conestoga under the title insurance policies once the attack was made on the validity of the W.P.R. Mortgages. Those rights dictate when Conestoga could have suffered any damages and the date on which Conestoga could have brought litigation against ABM to recoup its losses. Upon receipt of a claim, Conestoga had the option to try to "fix" the underlying title problem through the institution of litigation on behalf of PNC. ***Elliott v. Chicago Title Insurance Company, 123 Ill.App.3d 226, 462 N.E.2d 640, 644 (1984)***(title company had right to clear title before an action can be brought under the policy). Conestoga exercised this right when it

attempted, through litigation in the State Court, to obtain a determination that the mortgages were valid as insured. Unfortunately, because of the lack of authority on the part of Riccardo to execute the mortgages, Conestoga was not successful in its attempts. If Conestoga had been successful, there would have been no loss sustained by ER Holdings and, therefore, no damages sustained by Conestoga since no claim would have existed under the terms of the title insurance policies.

It is also important to note that until such time as the litigation was completed, RE Holdings had no right to pursue a claim for damages under the Policy, Conestoga had no obligation to make a payment to ER Holdings and any claim against ABM would have been premature. ***American Legion v. Southwest Title, 253 La. 608, 218 So.2d 612 (1969)(a proof of loss under a title policy is premature until liability is fixed); People v. Chicago Title, 37 Ill.App.3d 950, 346 N.E.2d 168, 169 (1976)(until such time as title is finally determined, a suit to recover under a title policy would be premature); Bronen v. New York Abstract Company, 19 A.D.2d 821, 822, 243 N.Y.S.2d 664 (1963)(a condition precedent to a claim has not materialized until there is a final determination adverse to title)***. Until such time as Conestoga was forced to make payment under the Policy, Conestoga had not sustained any damages as a result of the wrongful conduct complained of in this case and ABM would not have had a duty to indemnify Conestoga under the Agency Agreement. The damages were sustained on February 22, 2010 when Conestoga made the $870,000 payment to ER Holdings. Had Conestoga filed suit prior to the payment, ABM would have defended on the basis that the claim was premature because no loss had yet been sustained.

The statute of limitations argument made by ABM is just another in a continuing line of specious defenses asserted to avoid liability for its wrongful conduct.

## IV. CONESTOGA IS NOT BRINGING THIS ACTION AS A SUBROGEE AND THEREFORE, IT IS NOT SUBJECT TO ANY DEFENSES WHICH MIGHT HAVE BEEN AVAILABLE AGAINST ER HOLDINGS.

In another incredible misstatement of the facts of this case, ABM devotes an entire section of its Brief to the doctrine that a subrogee has no greater rights that that held by its subrogor. Then, with no evidence that Conestoga is acting in any capacity other than its own, ABM states that this action has been brought by Conestoga as a subrogee of ER Holdings. As this Court is well aware, this case was brought by Conestoga under the Agency Agreement existing between Conestoga and ABM and based on a breach of the duty of care which existed directly between Conestoga and ABM. At no time has there been any indication that Conestoga is attempting to assert any claim against ABM arising from rights which may have been held by ER Holdings and assigned to Conestoga. Conestoga's rights as subrogee are being pursued in the underlying state court litigation, but not in this case. As Conestoga is not asserting rights in this case as a subrogee, any defenses which ABM mistakenly believes may exist as to ER Holdings are completely irrelevant to this case.

## V. CONESTOGA HAS ESTABLISHED ITS RIGHT TO RELIEF.

Conestoga has presented to the Court in its motion for summary judgment and supporting documents overwhelming evidence that ABM closed the two loan transactions in the face of evidence that Riccardo did not have authority to bind W.P.R. in the loan transactions. To defend its wrongful conduct, ABM claims that the Agency Agreement is ambiguous and that because there were no specific underwriting memoranda addressing the issue of confirming corporate authority, that no matter how egregious the conduct of ABM in failing to confirm the authority of Tedesco, ABM is somehow off the hook. A review of the Agency Agreement shows that it is not ambiguous. It requires an agent to process title matters in accordance with customary community practices and recognized underwriting procedures. There is nothing ambiguous

about that. All of the characterization of the testimony of William Parker in ABM's Brief on this issue as evasive is simply ridiculous. Mr. Parker specifically stated that there was an obligation on the part of ABM to conduct additional due diligence when it became aware of all of the documents in the public records which were directly inconsistent with Riccardo's allegations of authority and Mr. Parker gave examples of the additional due diligence which should have been conducted. In fact, one of the key points made by Mr. Parker was that ABM should have contacted someone other than Riccardo in an effort to confirm authority, particularly since Lydia Tedesco had executed all of the more recent loan documents, which position is consistent with both Pennsylvania law and New York cited above on the duty of a party to verify the authority of the person with whom it is dealing. To argue that it is unclear that the Agency Agreement required more of ABM than simply asking Riccardo to confirm his authority in writing is a gross distortion of the Agency Agreement and the testimony.

      Furthermore, there is simply no authority for ABM's argument that Conestoga can only require an agent to act in accordance with specific underwriting memoranda distributed by Conestoga. ABM seems to argue that if Conestoga did not publish a specific directive, then an agent cannot be held liable for any conduct relating to a subject matter about which no underwriting memorandum was issued. This ignores the fact that standards for the conduct of title agents are not created solely by the issuance of underwriting memoranda. They are also created by custom and practice in the industry, as well as the law, and it cannot be expected that Conestoga would be in a position to issue a memorandum for every possible thing which could occur at a real estate settlement. That just does not make sense. The principal of ABM was a well seasoned title veteran who should have been familiar with what a reasonable title agent does to confirm the authority of the person who is purporting to have the authority to execute

documents in a transaction. Instead of understanding its obligations, ABM in essence did nothing in this case because its principal testified that <u>he had no obligation whatsoever to confirm the authority of Riccardo to act</u>. Even ABM's untimely filed expert report acknowledges the fallacy of that position. While ABM chastises Conestoga's contention in its initial filing that common sense dictated that ABM do more when it learned that Riccardo had not executed a single document for W.P.R. since 1988, Conestoga fully believes that common sense applies and that the failure to take any further action to confirm the authority of Riccardo was negligence on ABM's part.

ABM then argues that Conestoga's expert reports do not support Conestoga's position in this case. It is hard to imagine how anyone could read those reports and then take that position. Both experts clearly opined that the conduct of ABM in this case was improper and fell below the standard of care. The fact that the experts indicated that others may also have fallen short of their obligations at the closings does not change the fact that ABM has responsibility for the losses it caused.

Finally, it should be noted that as it has done throughout this case, rather than accept responsibility for its negligent actions, ABM tries to deflect this Court's attention from its own wrongdoing by pointing the finger at Attorneys Yackow and Merovitch, claiming that they should have discovered Tedesco's wrongdoing and stopped the transactions from occurring. This case is not about what those attorneys did or did not do. It is about ABM's failure to act reasonably. Whether others may have liability to ABM in this case has no bearing on the liability of ABM to Conestoga. As this Court has already advised ABM in its opinion denying ABM's motion to dismiss the complaint, the possibility that ABM may have a claim over against

two attorneys "has nothing to do with this Court's ability to afford complete relief on the breach of contract claim as between Conestoga and ABM." **Opinion at p. 8 [Docket document no. 24].**

## VI. CONCLUSION

It is respectfully suggested that Conestoga has met its burden of proving its entitlement to summary judgment in this matter. With all due respect to counsel's arguments, they simply do not address the fact that there are no material issues of fact in dispute regarding the manner in which ABM conducted itself in the two transactions. There also is no support for an argument that in the face of what ABM knew from the publicly filed documents, ABM met its obligations by simply asking Riccardo to execute a few documents confirming that he was authorized to act for W.P.R. As stated previously, common sense dictated more. By failing to do more, ABM caused the very loss sustained by Conestoga and Conestoga is entitled to recover those losses from ABM.

Respectfully submitted,

/s/ John A. Wait
John A. Wait, Esquire
JOHN A. WAIT, ESQUIRE
Fox Rothschild LLP
100 Park Avenue @ East 40th Street
15th Floor
New York, NY 10017
212) 878-7900

-and-

Edward J. Hayes, Esquire
Admitted Pro Hac Vice
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
(215) 299-2092
Attorneys for Plaintiff,
Conestoga Title Insurance Company

Dated: December 9, 2011

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true and correct copy of the Reply Brief in this matter on the following individuals by first class mail, postage pre-paid:

Kenneth McLellan, Esquire
45 Broadway, 19th Floor
New York, NY  10006

Edward G. Warren, Esquire
McDonough Law, LLP
145 Huguenot Street
New Rochelle, NY  10801

Jay Yackow, Esquire
1400 Old Country Road, Suite 309
Westbury, NY 11590


Date:  December 9, 2011

/s/  Edward J. Hayes
EDWARD J. HAYES